[No. 51599-3-I. Division One. December 29, 2003.]

*In the Matter of the Restoration of Firearm Rights of* JEFFREY NELSON.

JEFFREY NELSON, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

*Elizabeth S. Fasano* and *Michael J. Tario* (of *Tario & Associates, P.S.*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Karen L. Frakes* and *MacDuffie Setter, Deputies*, for respondent.

BECKER, C.J.— The issue in this appeal is whether carrying a firearm is unlawful for a person who committed serious offenses as a juvenile, but has since obtained a court order expunging the record of those offenses. Under the statutes in effect at the time appellant Nelson petitioned for an order certifying his right to carry a firearm, Nelson was entitled to have the juvenile proceedings treated as though they never occurred. Proceedings that never occurred do not result in a predicate conviction for purposes of the firearm statute. We conclude the statute does not bar Nelson from carrying a firearm. The trial court ruling to the contrary is reversed.

The State charged Jeffrey Nelson with committing certain felonies when he was between the ages of 12 and 15 years old. He pleaded guilty in December 1992.

A criminal statute makes firearm possession unlawful for persons who have been convicted of a serious offense. RCW 9.41.040. Nelson's juvenile offenses were serious, but at the time he committed them the statute did not include juvenile offenses as predicate offenses.[1] This changed as of June 10, 1992, the effective date of an amendment making the statute applicable to juveniles:

> A person, *whether an adult or juvenile,* is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted in this state or elsewhere of any serious offense as defined in this chapter.

RCW 9.41.040(1)(a) (emphasis added).

The person convicted of a predicate offense is to be notified by the court, both orally and in writing, "that the person must immediately surrender any concealed pistol license *and that the person may not possess a firearm unless his or her right to do so is restored by a court of record.*" RCW 9.41.047(1). Nelson was arrested in 1999 for unlawful possession of a firearm. According to his petition he obtained a dismissal of the charge "because I was not aware and was never advised that I was not to possess firearms."[2]

In April 2000, Nelson applied for and received a superior court order sealing and expunging his juvenile record, as is permitted by RCW 13.50.050(11):[3]

> In any case in which an information has been filed pursuant to RCW 13.40.100 or a complaint has been filed with the prosecutor and referred for diversion pursuant to RCW 13.40.070, the person the subject of the information or complaint may file a motion with the court to have the court vacate its order and findings, if any, and, subject to subsection (23) of

---

[1] *See* former RCW 9.41.040 (1983).

[2] Clerk's Papers at 24.

[3] Statutes enacted by the legislature in 1997 and 2001 to restrict eligibility for expungement did not preclude Nelson from obtaining expungement because of the particular timeline of events in his case. *See generally State v. T.K.,* 139 Wn.2d 320, 987 P.2d 63 (1999); Laws of 2001, ch. 49, §§ 1-2.

this section, order the sealing of the official juvenile court file, the social file, and records of the court and of any other agency in the case.

The order stated that "the information, judgment and record against Jeffery C. Nelson are sealed and expunged" and that the records were to be destroyed and forever sealed. "All pertinent law enforcement agencies and the Department of Corrections" were likewise ordered to seal and destroy their records.[4]

Nelson petitioned the superior court in July 2002, for a certificate and order restoring his right to carry a firearm under RCW 9.41.047. Nelson's petition acknowledged his juvenile adjudications and documented the order expunging and sealing his records. At the hearing, the first argument presented by Nelson's attorney was that application of the amended version of the criminal statute would be an ex post facto violation. She then began to argue about the effect of the order of expungement: "I guess we would also argue it is as if he had never been convicted. He has had a full expungement, and the records have been destroyed. And the law states that he can state for all purposes that he has not been convicted of this crime."[5]

At this point, the State responded that the Supreme Court had already rejected the ex post facto argument in an analogous setting, citing *State v. Schmidt*, 143 Wn.2d 658, 676-77, 23 P.3d 462 (2001). The State took the position that under *Schmidt*, a court order purporting to restore Nelson's firearm rights would not protect him from criminal liability. Referring to appellant Ayers in *Schmidt* (an opinion consolidating two cases), the prosecutor stated, "That's the same type pattern as *Ayers*, Your Honor. Not only that, but the trial court actually granted the petition, and the defendant was still exposed to criminal liability. That's what the Court wants to avoid here."[6] Based on this understanding

---

[4] Order Sealing and Expunging R., Apr. 6, 2000, Clerk's Papers at 28.

[5] Report of Proceedings at 6.

[6] Report of Proceedings at 6.

of the *Ayers* matter, the court became concerned that issuing an order restoring Nelson's firearm rights would give Nelson a "false sense of security":

> Court: You're asking me to issue a certificate and order under the statute restoring his right to possess firearms. It appears that that was done in this case, and he still got convicted. Am I right?
>
> [Nelson's Counsel]: Yes.
>
> [State]: Yes.
>
> . . . .
>
> Court: I would be leading him into a false sense of security.
>
> . . . if I restore his firearms rights, he goes out today; and if he has a gun, firearm in his possession, he's going to be convicted, maybe sent to prison. So I think it would be a misdeed to do that.[7]

The court denied Nelson's petition, and this appeal followed.

■ Nelson argues, as he did below, that application of the amended version of the criminal statute is an ex post facto violation because it results in additional punishment for his juvenile offenses. Following *Schmidt*, we reject this argument. Although the prohibitions of the amended firearm statute impose a disability and a threat of criminal prosecution if violated, they do not amount to punishment for a previous conviction, nor do they alter the standard of punishment. *Schmidt*, 143 Wn.2d at 676. We also reject Nelson's argument that the analysis should be different where the previous conviction was for a juvenile offense. *See State v. Watkins*, 76 Wn. App. 726, 732, 887 P.2d 492 (1995) (applying, in a juvenile case, the same ex post facto analysis later used in *Schmidt*).

Nelson's primary argument on appeal is that the order expunging his juvenile records means that he has not "previously been convicted" for purposes of RCW 9.41.040-(1)(a). Once a court has expunged the record, the statute

---

[7] Report of Proceedings at 7-8.

authorizing expungement directs that the juvenile proceedings be treated "as if they never occurred":

> (14) If the court grants the motion to seal made pursuant to subsection (11) of this section, it shall, subject to subsection (23) of this section, order sealed the official juvenile court file, the social file, and other records relating to the case as are named in the order. *Thereafter, the proceedings in the case shall be treated as if they never occurred, and the subject of the records may reply accordingly to any inquiry about the events, records of which are sealed.* Any agency shall reply to any inquiry concerning confidential or sealed records that records are confidential, and no information can be given about the existence or nonexistence of records concerning an individual.

RCW 13.50.050(14) (emphasis added).

■ ■ The issue is whether, as a result of the order of expungement, RCW 9.41.040(1)(a) no longer prohibits Nelson from carrying firearms. Without directly confronting this issue, the State's brief contends it is not preserved for review because Nelson did not raise it in his brief to the trial court. But while Nelson's trial court memorandum mentioned only the ex post facto issue, Nelson did allege the relevant facts in his petition, and the record of the oral argument quoted above reflects that his attorney did begin to argue the effect of the expungement order before getting sidetracked by the discussion about the *Ayers* case in *Schmidt*.

The State on appeal no longer urges the *Ayers* case as dispositive authority. The case does not actually support the trial court's conclusion that Nelson would have remained exposed to criminal liability for carrying a firearm if the court had granted his petition. The information charging Ayers with unlawful firearm possession referred to incidents occurring *before* Ayers obtained the court order restoring his right to carry a firearm, not afterwards. *Schmidt*, 143 Wn.2d at 666-67.

Because the trial court immediately accepted the State's erroneous argument about *Ayers* and regarded it as dispositive, it is not surprising that the record does not

include more extensive development of Nelson's expunge-
ment argument. We conclude Nelson sufficiently raised the
issue. And the expungement statute, although not cited to
the trial court, may be considered on appeal because it is
pertinent to the substantive issue that Nelson raised below.
*Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990).

■ ■ The issue is one of statutory interpretation, and
our review is de novo. *State v. Argueta*, 107 Wn. App. 532,
536, 27 P.3d 242 (2001). Courts, when interpreting a stat-
ute, should assume the legislature means exactly what it
says. Plain words do not require construction. The courts do
not engage in statutory interpretation of a statute that is
not ambiguous. If a statute is plain and unambiguous, the
court must derive its meaning from the wording of the
statute itself. *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d
1030 (2001).

Relying entirely on the firearm possession statute, the
State argues that Nelson may not possess firearms legally
until his previous convictions are nullified by a pardon or
"other equivalent procedure" wherein he is found to be
rehabilitated or innocent:

> Notwithstanding RCW 9.41.047 or any other provisions of
> law, as used in this chapter, a person has been "convicted",
> whether in an adult court or adjudicated in a juvenile court, at
> such time as a plea of guilty has been accepted, or a verdict of
> guilty has been filed, notwithstanding the pendency of any
> future proceedings including but not limited to sentencing or
> disposition, post-trial or post-factfinding motions, and appeals.
> Conviction includes a dismissal entered after a period of
> probation, suspension or deferral of sentence, and also includes
> equivalent dispositions by courts in jurisdictions other than
> Washington state. *A person shall not be precluded from posses-
> sion of a firearm if the conviction has been the subject of
> a pardon, annulment, certificate of rehabilitation, or other
> equivalent procedure based on a finding of the rehabilitation of
> the person convicted or the conviction or disposition has been
> the subject of a pardon, annulment, or other equivalent proce-
> dure based on a finding of innocence.* Where no record of the

court's disposition of the charges can be found, there shall be a rebuttable presumption that the person was not convicted of the charge.

RCW 9.41.040(3) (emphasis added).

■ The "equivalent procedure" in RCW 9.41.040(3) requires more than an automatic restoration of rights. It must involve a specific finding of rehabilitation. *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001); *Nakatani v. State*, 109 Wn. App. 622, 626-27, 36 P.3d 1116 (2001). Although Nelson now asserts that expungement is equivalent to a finding of rehabilitation, he did not make this argument below. In any event the record does not show any finding of rehabilitation that would satisfy the statute as interpreted by *Radan*.

But trying to determine whether Nelson's convictions have been "the subject of a pardon . . . or other equivalent procedure" is putting the cart before the horse. First we must determine whether, after expungement, there is a conviction to which RCW 9.41.040 applies. *Radan* does not address the interaction of RCW 9.41.040 with an expungement statute like Washington's.

The State points to federal cases cited in *Radan*. These federal cases hold that prior convictions, though negated in some manner short of a finding of rehabilitation, can still be used to impeach a witness.[8] Typical is *Wilson v. Attaway*, 757 F.2d 1227 (11th Cir. 1985). A state court had discharged a defendant from probation under a first time offender statute providing that the defendant, upon discharge, "shall not be considered to have a criminal conviction." GA. CODE ANN. § 42-8-62 (1982). The federal court allowed use of the

---

[8] Fed. R. Evid. 609(c) provides:

Effect of pardon, annulment, or certificate of rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

conviction to impeach the defendant in a later proceeding because the Georgia discharge statute did not provide for "rehabilitation within the meaning of Rule 609(c)." *Wilson*, 757 F.2d at 1244. The court found support in Georgia cases holding that a first offender's right to be protected against the stigma of a criminal record does not outweigh the right to impeach a witness in a criminal trial. *See, e.g., Gilstrap v. State*, 250 Ga. 814, 301 S.E.2d 277, 279 (1983), cited in *Wilson*, 757 F.2d at 1244.

*Wilson* and other cases decided in the context of the federal evidence rule on impeachment are not particularly helpful in deciding whether Nelson may or may not lawfully carry a firearm. He has more at stake than the potential embarrassment of having his juvenile offenses exposed if he is ever called as a witness. He needs to know whether carrying a firearm exposes him to criminal liability. Furthermore, at the time *Wilson* was decided, the Georgia statute did not call for the destruction or sealing of the criminal record and so it is not completely analogous to Washington's expungement statute.

After expungement of juvenile records in Washington, "the proceedings in the case shall be treated as if they never occurred." RCW 13.50.050(14). A court may not use an expunged offense as the basis of a sentence enhancement. *State v. Rawls*, 114 Wn. App. 719, 60 P.3d 113 (2002). The State Patrol may preserve records of an expunged offense insofar as the records include information identifying the person, such as fingerprints, but not information about the conviction itself. RCW 13.50.050(23).[9]

■ If the proceedings never occurred, logically the end result—a conviction—never occurred either. The plain lan-

---

[9] RCW 13.50.050(23) provides:

No identifying information held by the Washington state patrol in accordance with chapter 43.43 RCW is subject to destruction or sealing under this section. For the purposes of this subsection, identifying information includes photographs, fingerprints, palm prints, soleprints, toe prints and any other data that identifies a person by physical characteristics, name, birthdate or address, but does not include information regarding criminal activity, arrest, charging, diversion, conviction or other information about a person's treatment by the criminal justice system or about the person's behavior.

guage of the expungement statute entitles Nelson to act and be treated as if he has not previously been convicted. If he has not previously been convicted, he may legally possess firearms.

The trial court did find that Nelson had previous convictions, and the State contends the finding is supported by Nelson's acknowledgement of his prior convictions in his petition. But even if the fact of Nelson's juvenile convictions is undisputed, legally the court could not conclude he had been "convicted" for purposes of the firearm statute because the court was obligated to treat the juvenile proceedings as if they never occurred.

Nelson acknowledged his prior convictions only to assist the court in determining whether he was entitled to a certificate and order restoring his right to carry a firearm. Theoretically, Nelson could have avoided acknowledging his convictions if he had simply begun to carry firearms without seeking a certificate of his right to do so. Then, if arrested and charged, he could have asserted the expungement order as a defense and would have been entitled to dismissal of charges based on the reasoning in this opinion. But given the uncertainty about the outcome, and his prior experience with arrest, his attempt to clarify his status before carrying firearms was a prudent course. Under the circumstances it would be unjust to hold that by acknowledging his previous convictions, Nelson waived his right to the clean slate provided by the expungement order.

Not only does the expungement statute support Nelson's position, the firearm statute itself states that where "no record of the court's disposition of the charges can be found, there shall be a rebuttable presumption that the person was not convicted of the charge." RCW 9.41.040(3). The State did not present any records showing that Nelson has been convicted of a predicate offense that precludes him from possessing firearms. The State could not have done so, because there are no longer official records of any such offense. Nelson's conviction record from the Washington State Patrol is in evidence and it shows no prior convictions.

Accordingly, Nelson was entitled to the statutory presumption that he was not convicted. This presumption is consistent with the expungement statute's directive to treat Nelson's convictions as if they never occurred.

We conclude that RCW 9.41.040 does not make it unlawful for Nelson to carry a firearm so long as he has no convictions other than those expunged. The trial court erred in concluding otherwise.

Reversed and remanded for further proceedings not inconsistent with this opinion.

APPELWICK and SCHINDLER, JJ., concur.