# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MARK A. WOODWARD, | ) | No. 76932-4-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| THE STATE OF WASHINGTON AND | ) | PUBLISHED OPINION |
| THE SNOHOMISH COUNTY | ) | |
| SHERIFF'S OFFICE, | ) | |
| | ) | |
| Respondents. | ) | FILED: August 13, 2018 |

MANN, A.C.J. — Mark Woodward appeals a Snohomish County Superior Court order denying his petition to restore his firearm rights. The issue before us is whether Woodward's juvenile class A felony adjudication makes him ineligible for restoration of firearm rights, even though the conviction is sealed. Division Two recently confirmed this court's earlier decision in Nelson v. State, 120 Wn. App. 470, 85 P.3d 912 (2003), where we held that sealed juvenile adjudications are treated as if they never occurred and therefore do not prohibit restoration of firearm rights. Barr v. Snohomish County Sheriff, 4 Wn. App. 2d 85, 419 P.3d 867 (2018). We agree with Division Two's analysis and conclusion that Nelson remains good law. Accordingly, we reverse.

## FACTS

In 1993, the Snohomish County Juvenile Court adjudicated Woodward of a class A felony, thereby making it unlawful for him to possess a firearm under RCW 9.41.040(1)(a).[1] In December 2016, Woodward moved to seal his juvenile adjudication under RCW 13.50.260(4), the juvenile records sealing statute. On December 12, 2016, Woodward filed a petition in Snohomish County Superior Court to restore his firearm rights. In the petition, Woodward referenced his juvenile adjudication by cause number, court and adjudication date, but wrote "SEALED" for the name of the offense. Woodward's petition further declared that he had "never been convicted of a class A felony or any felony within a maximum sentence of at least twenty years in any jurisdiction."

On December 19, 2017, the State responded that it did not object to Woodward's petition because he "appears to meet all of the statutory requirements in order to be eligible for an order restoring his firearms rights." The State's response specified that its search of Woodward's criminal history found "no prior felony convictions that would count in his offender score." On December 22, 2016, the juvenile court granted Woodward's motion to seal his juvenile class A felony adjudication. On January 5, 2017, the superior court entered an order restoring Woodward's firearm rights.

On February 2, 2017, Woodward filed an application for a concealed pistol license (CPL) with the Snohomish County Sheriff's Office (Sheriff). The Sheriff searched Woodward's criminal history to determine whether he had any convictions that would

---

[1] RCW 9.41.40(1)(a) provides: "A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense as defined in this chapter."

make him ineligible to possess a firearm and therefore ineligible to obtain a CPL. This search revealed Woodward's sealed juvenile class A felony adjudication, as well as the order restoring his firearm rights. On February 8, 2017, notwithstanding the order, the Sheriff denied Woodward's CPL application on the ground that his class A felony adjudication rendered him ineligible to possess a firearm under state and federal law.

On March 24, 2017, the Sheriff moved to intervene in Woodward's firearm restoration case. The Sheriff then moved to vacate the order restoring Woodward's firearm rights, arguing that class A felons are ineligible to seek restoration of firearm rights even if the adjudication is sealed. Woodward argued that because a sealed juvenile record is treated as though it never occurred, he had no conviction that would prevent him from having his firearm rights restored. On April 13, 2017, the court granted the Sheriff's motion to intervene and motion to vacate on an alternative basis, finding that Woodward's petition materially misrepresented that the juvenile conviction was sealed when in fact sealing did not occur until 10 days later.

On April 27, 2017, Woodward filed an amended petition for firearm restoration. The Sheriff again objected to Woodward's petition on the ground that class A felons are ineligible for restoration of firearm rights even if the adjudication is sealed. On May 18, 2017, a superior court commissioner agreed with the Sheriff and denied Woodward's amended petition. Woodward appeals.

## DISCUSSION

The superior court commissioner denied Woodward's amended petition based on her interpretation of RCW 13.50.260. Statutory interpretation is a question of law that

3

we review de novo. HomeStreet, Inc. v. State Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009).

## Sealed Juvenile Adjudications

Under RCW 9.41.040(1)(a), it is unlawful for a person who has been convicted of a "serious offense" to possess a firearm.[2] RCW 9.41.040(4)(a) allows for restoration of lost firearm rights if certain statutory criteria are met. However, that statute expressly prohibits restoration of firearm rights to persons convicted of a class A felony. It is undisputed that Woodward's class A juvenile felony adjudication is a "serious offense" which caused him to lose his firearm rights. It is also undisputed that at the time Woodward filed his amended petition to restore firearm rights, his class A felony juvenile adjudication was sealed pursuant to RCW 13.50.260(6)(a). Once a court enters an order sealing a juvenile court record, "the proceedings in the case shall be treated as if they never occurred, and the subject of the records may reply accordingly to any inquiry about the events, records of which are sealed." RCW 13.50.260(6)(a).

Woodward, relying on Nelson, argues that his sealed class A juvenile adjudication does not preclude him from possessing a firearm. Nelson received an order "sealing and expunging" certain "serious offenses" he committed as a juvenile. Nelson, 120 Wn. App. at 472-73. He then filed a petition to restore his firearm rights, which the superior court denied. Nelson, 120 Wn. App. at 474. On appeal, this court was asked to decide whether, "as a result of the order of expungement, RCW 9.41.040(1)(a) no longer prohibits Nelson from carrying firearms." Nelson, 120 Wn. App. at 476. The Nelson court began by noting that "the statute authorizing

---

[2] A "conviction" under RCW 9.41.040 includes adjudications in juvenile court. RCW 9.41.040(3).

expungement directs that the juvenile proceedings be treated 'as if they never occurred.'" Nelson, 120 Wn. App. at 475-76 (quoting former RCW 13.50.050(14)). The court reasoned that

> [i]f the proceedings never occurred, logically the end result—a conviction—never occurred either. The plain language of the expungement statute entitles [a person] to act and be treated as if he has not previously been convicted. If he has not previously been convicted, he may legally possess firearms.

Nelson, 120 Wn. App. at 479-80. Accordingly, the Nelson court held that RCW 9.41.040 did not make it unlawful for Nelson to carry a firearm. Nelson, 120 Wn. App. at 481.

Division Two recently addressed this same issue in Barr. A juvenile court adjudicated Barr of two class A felonies. Barr, 4 Wn. App. 2d at 91. More than two decades later, the juvenile court granted Barr's petition to seal his felony juvenile adjudications under RCW 13.50.260, the juvenile records sealing statute. Barr, 4 Wn. App. 2d at 91. The court then entered an order stating that Barr "had no prior felony convictions" and that he qualified for restoration of his firearm rights under RCW 9.41.040(4)(a)(ii). Barr, 4 Wn. App. 2d at 92.

Barr subsequently applied for a CPL through the Snohomish County Sheriff's Office. The Sheriff denied Barr's application, citing his two juvenile class A felony adjudications as the basis for the denial. Barr, 4 Wn. App. 2d at 92. Barr then filed a petition in superior court seeking a writ of mandamus directing the Sheriff to issue him a CPL. Barr argued that under RCW 13.50.260(6)(a), sealed adjudications "shall be treated as if they never occurred." Therefore, according to Barr, his sealed juvenile class A felony adjudications did not exist and he was not prohibited from possessing a

firearm under RCW 9.41.040(4) or federal law. <u>Barr</u>, 4 Wn. App. 2d at 92. The superior court rejected Barr's arguments and denied his petition for a writ of mandamus. Barr appealed.

Division Two agreed with Barr, holding that "the reasoning of <u>Nelson</u> and the applicable statutes show that Barr is not precluded from possessing a firearm and that the Sheriff breached its clear legal duty by denying Barr a CPL." <u>Barr</u>, 4 Wn. App. 2d at 99. The court reasoned that because a sealed juvenile conviction is treated as if it "never occurred," Barr may "act and be treated as if he has not previously been convicted." <u>Barr</u>, 4 Wn. App. 2d at 97 (quoting <u>Nelson</u>, 120 Wn. App. at 479-80).

We agree with Division Two's analysis in <u>Barr</u>. We hold that under <u>Nelson</u> and <u>Barr</u>, the superior court erred in concluding that Woodward's sealed juvenile class A felony adjudication rendered him ineligible for restoration of firearm rights.

*Sheriff's Arguments*

The Sheriff makes several arguments in support of the superior court's denial of Woodward's petition, many of which were considered and rejected in <u>Barr</u>. We address each in turn.

A.    Nelson Remains Good Law

The Sheriff argues that because <u>Nelson</u> was decided before relevant statutory amendments to RCW 13.50.260, it no longer applies. We disagree.

The Sheriff first asserts that it is not clear whether <u>Nelson</u> applies to class A juvenile felony convictions, noting that <u>Nelson</u> does not identify the petitioner's crimes or address whether they fit into the exclusion from restoration of firearm rights in RCW 9.41.040. The <u>Barr</u> court rejected this argument, noting that "the <u>Nelson</u> decision did

not turn on the felony class, and the sealing statute does not differentiate between felony classes." Barr, 4 Wn. App. 2d at 99. We agree with Barr.

The Sheriff further contends that subsequent amendments to the sealing statute render the Nelson analysis obsolete. Prior to 2014, agencies could not view information about sealed adjudications because the Washington State Patrol (WSP) criminal history database was prohibited from "obtaining or including any information about the conviction." Former RCW 13.50.050(13). In 2014, the legislature recodified RCW 13.50.050 into RCW 13.50.260, deleted sections that prohibited WSP from obtaining such information, and added a section that provides prosecutors access to information on the existence of sealed juvenile records. RCW 13.50.260(8)(c). In 2015, the legislature added a section that provides criminal justice agencies access to sealed juvenile records information. RCW 13.50.260(8)(d). The Sheriff contends that following these statutory amendments, it is no longer tenable to argue that sealed juvenile records should be treated as though they do not exist because the sealing statute does not treat them that way.

We agree with the Barr court that these amendments do not render the holding in Nelson obsolete. Simply because RCW 13.50.260(8)(c) and (d) now require juvenile records to be accessible to prosecutors and criminal justice agencies, does not alter the fundamental holding in Nelson that under RCW 13.50.260(6)(a) once juvenile adjudications are sealed, they cannot be used while sealed. Requiring records be kept, even if they are sealed, is logical and necessary under RCW 13.50.260(8)(a) and (b) which mandate that sealed juvenile records be unsealed if the defendant is subsequently adjudicated of a juvenile crime or adult felony.

Moreover, "'The Legislature is presumed to be aware of judicial interpretation of its enactments,' and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same language." Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 147, 94 P.3d 930 (2004) (quoting Friends of Snoqualmie Valley v. King County Boundary Review Bd., 118 Wn.2d 488, 496-97, 825 P.2d 300 (1992)). RCW 13.50.260 has been amended eight times since Nelson. Yet "the legislature has never altered the provision stating that sealed adjudications are 'treated as if they never occurred.'" Barr, 4 Wn. App. 2d at 100 (quoting RCW 13.50.260(6)(a)). Accordingly, we agree that "the legislature has clearly acquiesced to the court's interpretation of the sealing statute's mandate that sealed felony adjudications are 'treated as if they never occurred' and are not prohibitions to possessing a firearm." Barr, 4 Wn. App. 2d at 100.

B.     Statutory Construction

The Sheriff argues next that Woodward's interpretation of RCW 9.41.040 and RCW 13.50.260 conflict with several principles of statutory construction. Matters of statutory interpretation are reviewed de novo. Tesoro Refining and Marketing Co. v. State Dep't of Revenue, 164 Wn.2d 310, 316, 190 P.3d 28 (2008) (citing Burns v. City of Seattle, 161 Wn.2d 129, 140, 164 P.3d 475 (2007)). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." State, Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing State v. J.M., 144 Wn.2d 472, 480, 28 P.3d 720 (2001)). "If, however, the statutory language is amenable to more than one

reasonable interpretation, a court may then resort to legislative history, principles of statutory construction, and relevant case law to resolve the ambiguity and ascertain the meaning of the statute." Ballard Square Condominium Owners Ass'n v. Dynasty Const. Co., 158 Wn.2d 603, 612, 146 P.3d 914 (2006).

### 1. Plain Language

The Sheriff first argues that Woodward's interpretation of RCW 9.41.040 and RCW 13.50.260 conflicts with the plain language of those statutes. According to the Sheriff, RCW 9.41.040 and RCW 13.50.260 address two separate topics: firearm possession and sealing of juvenile records. Therefore, the Sheriff contends RCW 13.50.260 cannot create a loophole for juvenile class A felons to evade application of RCW 9.41.040. But the Barr court disagreed, noting that the Nelson court rejected similar arguments in holding that "because the plain language of the juvenile record sealing statute entitled Nelson to be treated as if he had not been previously convicted, there was no conviction to be examined under RCW 9.41.040." Barr, 4 Wn. App. 2d at 104 (citing Nelson, 120 Wn. App. at 478-81). We agree with Barr and Nelson.

### 2. General-Specific Rule

The Sheriff contends that Woodward's reading of the statutes violates the "general-specific" rule of statutory construction. Under this rule, when two statutes governing the same subject matter conflict and cannot be harmonized, the specific statute prevails over the general statute. O.S.T. ex rel. G.T. v. Blue Shield, 181 Wn.2d 691, 701, 335 P.3d 416 (2014). But the Barr court noted that a sealed juvenile record containing a class A felony conviction "is treated as if it never occurred" and "a CPL applicant with sealed adjudication has no convictions preventing firearm possession."

9

4 Wn. App. 2d at 104. Accordingly, Barr concluded that this rule did not apply because the firearm statutes and the sealing statute "do not conflict" and "can be easily harmonized." 4 Wn. App. 2d at 104. Again, we agree with Barr.

### 3. Legislative History

Next, the Sheriff argues that Woodward's reading of RCW 9.41.040 conflicts with the statute's legislative history.[3] The Sheriff notes that in 1994, when RCW 9.41.040 was reenacted and amended, the legislature found that "increasing violence in our society causes great concern for the immediate health and safety of our citizens" and therefore sought to reduce "the unlawful use of and access to firearms." LAWS OF 1994, 1st Spec. Sess., ch. 7, § 101, at 2196, 2197. But as the Sheriff correctly acknowledges, reference to legislative history is unnecessary where, as here, the language of the statute is plain. HomeStreet, 166 Wn.2d at 451. As discussed above, we agree with Barr that the plain language of RCW 9.41.040 and RCW 13.50.260 does not prohibit restoration of firearm rights. Carrying a firearm in this situation is not unlawful and does not conflict with legislative history.

### 4. Practical Difficulties

The Sheriff next asserts that treating RCW 13.50.260 as a firearm restoration statute would lead to practical difficulties and absurd results. The Sheriff notes that RCW 13.50.260(8)(a) provides that "[a]ny adjudication of a juvenile offense or a crime subsequent to sealing has the effect of nullifying a sealing order." Consequently, according to the Sheriff, allowing this statute to summarily result in loss of firearm rights without further judicial process or notice would be confusing and absurd. But the Barr

---

[3] This is Woodward's only statutory interpretation argument that was not addressed in Barr.

court rejected this argument. It noted that "RCW 9.41.047(1)(a) requires that a defendant be notified of his or her ineligibility to possess a firearm only under certain conditions, none of which are present here." Barr, 4 Wn. App. 2d at 106. Barr was aware he was ineligible to possess firearms based on his sealed adjudications, and that the sealing order notified him that the order would be nullified if he committed another felony. Therefore, "[i]t would not be absurd or unfair if the unsealing of these adjudications again rendered him ineligible to possess a firearm or a CPL." Barr, 4 Wn. App. 2d at 106. We agree with Barr.[4]

C.    Attorney General Opinion

The Sheriff argues finally that Woodward's interpretation of the sealing statute conflicts with a 2002 opinion of the attorney general stating that persons convicted of class A felonies cannot receive restoration of firearm rights except through a pardon by the governor containing a specific finding of rehabilitation or innocence. While we give considerable weight to opinions of the attorney general, they are not binding on this court and we give less deference when the opinion concerns statutory construction. Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1, 177 Wn.2d 718, 725, 305 P.3d 1079 (2013).

The Sheriff made a similar argument in Barr. The Barr court declined to follow the same attorney general's opinion, explaining:

the attorney general published its opinion on firearm rights restoration in 2002, a year before the Nelson case was decided. Because of this, the

---

[4] We note that the order sealing Woodward's juvenile class A felony conviction is not in the record before us. However, given the express statutory requirement that committing a subsequent crime results in nullification of the sealing order, it is reasonable to presume that a juvenile class A felon who became eligible to carry a firearm following entry of a sealing order is aware of the consequences of committing another crime.

attorney general did not have the benefit of case law directly on point when drafting its opinion. Accordingly, the attorney general's opinion is not useful and is ultimately not binding on this court.

<u>Barr</u>, 4 Wn. App. 2d at 105. We agree with <u>Barr</u>.

## CONCLUSION

Under both <u>Nelson</u> and <u>Barr</u>, Woodward's sealed juvenile conviction must be treated as if it never occurred. Consequently, the superior court erred in denying Woodward's application to restore his firearm rights based on his sealed juvenile adjudication. We therefore reverse and remand to the superior court for further proceedings in accordance with this opinion.

We reverse.

_____
Mann, A.C.J.

WE CONCUR:

_____          _____
                                          Becker, J.